UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CASE NO. 1:19-CR-10459-RWZ-6 |
| v. ) | |
| ) | |
| FRANCISCO LOPEZ, ) | |
| a/k/a "King Cisco," ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR COMPASSIONATE RELEASE

The United States of America, through undersigned counsel, hereby submits this opposition to the Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (hereinafter "C.R. Motion, p. _" by page, ECF #2348). After a careful and thorough consideration of the Defendant's presentence report and argument by the parties, in June of 2021, this Court sentenced the Defendant to 108 months in prison, which was the low-end of the sentencing range under the Fed. R. Crim. P. 11(c)(1)(C) plea agreement (ECF #1638). Now, dissatisfied with the sentence he negotiated and the benefit of which he received, he moves for compassionate release. The government opposes this motion on every basis.

*First*, the Defendant failed to exhaust administrative remedies prior to submitting this motion. The BOP has provided documentation that the Defendant has never sought compassionate release through the administrative process. *See* Exhibit 1 (email from BOP staff attorney). The government has no information that the "Inmate Request to Staff" was ever submitted by the Defendant, and this Court should consider carefully the potential that this Defendant intends to misleads this Court through submission of materials that were never actually provided to the Warden. *See* ECF 2348-1 (purported exhibit).

*Second*, there are no extraordinary and compelling reasons to release the Defendant. The Defendant submitted a medical summary records showing that he previously had COVID diabetes, and asthma.  *See* ECF #2348-2.  In truth, the Defendant medical conditions were already considered by the Court at sentencing in imposing the low-end of the sentencing range despite his criminal history category being VI, and guidelines being 210 to 262 (PSR 43).  Consequently, his previously considered medical conditions do not constitute an "extraordinary and compelling reason" sufficient to warrant any further reduction of his sentence pursuant to § 3582(c)(1)(A)(i). The Defendant previously was diagnosed with COVID-19 in November 2020 (PSR ¶142). Moreover, the Defendant received the COVID-19 vaccine in September / October 2021.  *See* Exhibit 1.

*Third*, FCI-Cumberland (where Defendant is incarcerated) is not significantly at risk.  At present, 26 inmates of 1219 total inmates, and 17 staff have a confirmed case of COVID-19.[1]  This strongly suggests that the policies and procedures implemented by the Bureau of Prisons ("BOP") at FCI-Cumberland have proven successful in containing and mitigating the spread of the virus.

*Fourth,* even if "extraordinary and compelling reasons" did exist, the defendant has not demonstrated that he is no longer a danger to the community or that consideration of the § 3553(a) sentencing factors support his early release.  The Defendant is a leader of the Latin Kings as a general matter (PSR ¶¶46-49, 80), and personally is a prolific criminal offender (criminal history category VI) whose past criminal activity dates back to his teenage years, and reflects numerous convictions for breaking and entering, drug distribution, escape from a prerelease facility, assault with a knife, firearm possession, and witness intimidation.  *See* PSR ¶¶88-108.  Given the gravity

---

[1] See COVID-19 Coronavirus, Federal Bureau of Prisons, available at https://www.bop.gov/coronavirus/ (last accessed February 5, 2022).

of the Defendant's crimes in this case -- Offense Level 32 after acceptance of responsibility -- involvement in the Latin Kings racketeering conspiracy, as well as his prior criminal history, release of the Defendant would present an untenable risk of danger to the community and would not be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Given all the circumstances, including the nature of Defendant's crimes, releasing Defendant back to the community does not comport with the requirements of § 3582(c).

## **PROCEDURAL BACKGROUND**

The Defendant was indicted on December 4, 2019, and proceeded to Rule 11 on February 4, 2021. *See* ECF #1677. The parties entered into a Fed. R. Crim. P. 11(c)(1)(C) plea agreement setting a sentencing range of 108 to 151 months, and whereby the Defendant waived any right to appeal his sentence. *See* ECF #1638. The Defendant's offense level was determined to be 29 (PSR ¶98), and his criminal history category to be VI (with 22 points). *See* PSR ¶¶ 107-108. The guidelines sentence range was 210 to 240 months. PSR ¶157.

The Defendant sought a 108-month sentence. *See* ECF #1875. His argument seeking that variant sentence was largely predicated upon discussions of his severe mental health issues, substance abuse, and PTSD and how they have led him to victimize and brutalize others over the course of his criminal history.

The government sought a sentence of 151 months, which was the high-end of the sentencing range set by the plea agreement, and well below the applicable guidelines sentence range. *See* ECF #1952. On June 14, 2021, this Court sentenced the Defendant to 108 months in the Bureau of Prisons. *See* ECF #1971. This sentence was itself a variant sentence, and 102 months -- 8.5 years -- below the low-end of the applicable guidelines sentence range.

The instant Compassion Release motion was filed on January 26, 2021 (ECF #2348).

## DEFENDANT'S MOTION AND SUBMISSION

The Defendant's motion seeks compassionate release, presumably immediately. The Defendant claims a number of extraordinary and compelling circumstances. First, he cites his health issues and the attendant risks that Covid-19 poses as a direct result of those health issues, in particular "diabetes, asthma, obesity, and respiratory issues." C.R.Motion, p. 1-2. Second, he refers to his record of rehabilitation and programming. C.R.Motion, p. 4. Lastly, he refers to his children and family members as a basis for release. C.R.Motion, p. 5-6. The Defendant claims that his release is in accord with the Section 3553(a) factors. *See* C.R.Motion 6-7.

## APPLICABLE LEGAL FRAMEWORK

Section 3582(c) begins with the principle that "a court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States,* 560 U.S. 817, 824-25 (2010). "[T]here is no 'inherent authority' for a district court to modify a sentence as it pleases; indeed a district court's discretion to modify a sentence is an exception to [§ 3582's] general rule" barring modification. *United States v. Cunningham,* 554 F.3d 703, 708 (7th Cir. 2009); *cf. United States v. Goodwyn,* 596 F.3d 233, 235 (4th Cir. 2010) (noting that 18 U.S.C. § 3582(b) "states that a district court may not modify a term of imprisonment once it has been imposed unless the Bureau of Prisons moves for a reduction, the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 expressly permits the court to do so").

Section 3582(c)(1)(A) represents an exception to this general rule. The statute, adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the BOP Director. The provision was amended by Section 603(b) of the First Step Act, effective December 21, 2018. Under the statute as amended, a court may now consider a defendant's motion

4

for compassionate release following the exhaustion of administrative remedies with the BOP or 30 days after submitting a request to the appropriate Warden, whichever is sooner. 18 U.S.C. § 3582(c)(1)(A). The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the United States Sentencing Guidelines.

## ARGUMENT

"Before granting a sentence reduction in response to a prisoner-initiated motion for compassionate release alleging extraordinary and compelling reasons, a district court must make three findings." *United States v. Texeira-Nieves*, __ F.4th __, 2022 WL 109269, at *2 (1st Cir. Jan. 12, 2022). To start, "the court must find both that the defendant has presented an 'extraordinary and compelling' reason warranting a sentence reduction, 18 U.S.C. § 3582(c)(1)(A)(i), and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,' § 3582(c)(1)(A)." *Texeira-Nieves*, at *2. Then, "the district court must consider any applicable section 3553(a) factors, and 'determine whether, in its discretion, the reduction ... is warranted in whole or in part under the particular circumstances of the case.'" *Texeira-Nieves*, at *2, quoting *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021) (alteration in original) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). "The district court is not required to address the section 3553(a) factors unless it finds in favor of the movant on the other issues." *Texeira-Nieves*, 2022 WL 109269, at *2.

The defendant has the burden of showing entitlement to a sentence reduction. *See United States v. Nessassi*, 2021 WL 3079786, at *1 (D.Mass. July 20, 2021) (Zobel, S.D.J.); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").

5

*See, e.g.*, *United States v. Gates,* 2020 WL 2747851, at *2 (D. Mass. May 27, 2020) (Sorokin, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp.3d 1185, 1188 (D.N.M. 2019) (citations omitted). This Defendant's motion should be denied because Defendant cannot satisfy the three requirements of the statute that would justify release.

## I.     THE DEFENDANT HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES

As an initial matter, the Defendant has never sought compassionate release with the Warden of FCI-Cumberland.  *See* Exhibit 1. In support of his motion for compassionate release, the Defendant submitted a hand-written request that he purported was proof that he sought administrative remedies on November 30, 2021.  *See* ECF #2348, p. 1.  In truth, the BOP indicates that the Defendant never sought administrative release (Exhibit 1), and the Court should construe this exhibit and argument as inherently misleading and false. Consequently, the Defendant has not initiated, let alone exhausted administrative review.  As such, the Defendant's motion is not ripe for review. This Court should not reward the Defendant's gamesmanship by considering it, and should deny the motion.

## II.    THE DEFENDANT DOES NOT MEET THE REQUIREMENT OF EXTRAORDINARY AND COMPELLING REASON WARRANTING A SENTENCE REDUCTION

Even if this Court were to consider the Defendant's motion, it still fails on every level.  Not only are the Defendant's reasons not extraordinary or compelling, the policy statement and Section 3553(a) factors are not consistent with his release.

Once the threshold precondition of administrative exhaustion is satisfied, the court may modify a sentence only if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction."

18 U.S.C. § 3582(c)(1)(A)(i).² The defendant bears the burden of proving that he is entitled to relief. *See, e.g.*, *United States v. Gates,* 2020 WL 2747851, at *2 (D. Mass. May 27, 2020) (Sorokin, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp.3d 1185, 1188 (D.N.M. 2019) (citations omitted). Even when such reasons are proven by a defendant, release does not automatically follow. The proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

### A.     The Standard of Extraordinary and Compelling Reasons

Once the threshold precondition of administrative exhaustion is satisfied, the court may modify a sentence only if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i). The proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).³

The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13 Application Note 1. These include an assessment of the defendant's medical condition, age, family circumstances, and other reasons:

> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples

---

² Section 3582(c)(1)(A)(ii) provides other bases by which a defendant may be eligible for compassionate release; however, none of these factors are applicable in this case.

³ *See United States v. Saccocia*, 2021 WL 3660814 at *6 (1st Cir. Aug. 18, 2021) ("The Court must find that the defendant's situation constitutes the type of 'extreme hardship' that the compassionate-release statute is designed to ameliorate.).

> include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1.

The policy statement is not the only criteria the court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction. Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at App. Note 1(D). Accordingly, a court may grant compassionate release not only on grounds specified by the Sentencing Commission, but also those set forth in the relevant BOP regulation governing compassionate release.

That regulation appears at BOP Program Statement 5050.50. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1. Program Statement 5050.50 contains standards that are both more extensive than and slightly different from those stated in the § 1B1.13 Policy Statement. As is relevant here, the Program Statement defines a "debilitated medical condition" as follows:

Debilitated Medical Condition. RIS[4] consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:

- Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or

- Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

The BOP's review should also include any cognitive deficits of the inmate (e.g., Alzheimer's disease or traumatic brain injury that has affected the inmate's mental capacity or function). A cognitive deficit is not required in cases of severe physical impairment, but may be a factor when considering the inmate's ability or inability to reoffend.

Program Statement 5050.50 at 5.[5]

### B. The Existence of COVID-19 Does not Automatically Constitute "Extraordinary and Compelling Reasons" Justifying Release

Any residual risk in connection to the virus is not "extraordinary and compelling." *See United States v. Slater*, ⎯⎯ F.Supp.3d at ⎯⎯, 2021 WL 2666857, at *19 (D.Me. June 29, 2021) ("Given the low incidence of COVID-19 cases and high rate of COVID-19 vaccination ..., the Court concludes [that defendant's] risk of COVID-19 infection is not an extraordinary and compelling reason for his release"). The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The same goes for the emergence of the more recent Delta and Omicron variants. The

---

[4] RIS refers to a "reduction in sentence." Program Statement 5050.50 at 4.

[5] As noted, the Program Statement's provisions regarding the class of inmates eligible for compassionate release is slightly different from the related provision in Section 1B1.13. To the extent that the Program Statement and the Policy Statement conflict, it is the Policy Statement – *i.e.*, the source directly authorized by statute – that is binding. An interpretation in the Program Statement that does not contradict the Policy Statement, however, is entitled to some weight. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted).

guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own").

### C. The Defendant Has Not Proven Extraordinary and Compelling Reasons Exist to Warrant a Sentence Reduction

#### 1. Medical Conditions and COVID-19

The CDC has identified that certain individuals, based upon their increased age and/or preexisting medical conditions, are at an increased risk of severe illness from COVID-19. The Defendant claims, as he did at sentencing in June 2021 (ECF #1927, p. 5-10), that he has suffers from conditions that place him at risk were he to contract the COVID-19 virus. *See* C.R.Motion, p. 6 ("comorbidities place him at a very high risk of dying"). However, the Defendant was already diagnosed with COVID in January 2021 and survived with no lasting complications being reported to the medical personnel at FCI-Cumberland on September 21, 2021. *See* Exhibit 2, p. 46 (medical records and intake screening showing no "Cough, Shortness of Breath, Fatigue, Body aches, Sore throat, Diarrhea, Headache, Loss of taste or smell, Nausea or Vomiting").

Moreover, he appears to have fully recovered from a prior COVID-19 diagnosis dating back to January 2021. *See* PSR ¶140 (noting January 2021 COVID diagnosis); Exhibit 2, p. 46. "He has already contracted and recovered from COVID-19 without any serious complication and apparently continues to receive adequate medical care" at USP-Canaan. *See United States v. Gianelli*, __ F. Supp. 3d __, 2021 WL 1340970 at *2 (D. Mass. Apr. 9, 2021) (noting failure to to demonstrate an "extraordinary and compelling" reason warranting his release where defendant already recovered from COVID-19 without complication). "[T]he immediate threat to [defendant] has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i)." *United States v. Zahn*, No. 18-cr-00150, 2020 WL 3035795, at *2 (N.D. Cal. June 6, 2020).

The Defendant also appears to have misled the Court concerning his history of diabetes. In his compassionate release motion (ECF #2348, p. 1), and in his sentencing memorandum (ECF #1927, p. 5) – both instances when his sentence was being considered -- the Defendant claimed to suffer from diabetes. However, when consulting with BOP medical personnel on October 19, 2021, the Defendant denied a history of diabetes. *See* Exhibit 2, p. 58.

Additionally, the conditions at FCI-Cumberland are nowhere near as dire as his motion suggests. *Cf.* C.R.Motion, p. 3-4. Only 26 inmates of 1219 total inmates, and 17 staff have a confirmed case of COVID-19 at FCI-Cumberland.[6] This strongly suggests that the policies and procedures implemented by the Bureau of Prisons ("BOP") at FCI-Cumberland have proven successful in containing and mitigating the spread of the virus. These statistics (approximately

---

[6] *See* COVID-19 Coronavirus, Federal Bureau of Prisons, available at https://www.bop.gov/coronavirus/ (last accessed February 5, 2022).

11

1.8% infection rate among inmates) compare favorably with the infection rate in Massachusetts as a whole.[7]

The Defendant also has been vaccinated against COVID-19. *See* Exhibit 1. This circumstance, essentially forecloses the potential for the Defendant to demonstrate extraordinary and compelling circumstances. *See United States v. Trenkler*, 537 F.Supp.3d 91, 104 (D.Mass. May 6, 2021) ("That said, because Trenkler has received his first shot of the Moderna vaccine, and because of the state of the virus at USP Tucson has significantly improved, the Court concludes that Trenkler's heightened risk for severe COVID-19 does not rise to the level of extraordinary and compelling circumstances.").[8]

---

[7] *See* COVID-19 Response Reporting, https://www.mass.gov/info-details/covid-19-response-reporting (last accessed February 5, 2022).

[8] *See* e.g., *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); *United States v. Smith*, 2021 WL 1890770, at *3–6 (E.D. Cal. May 11, 2021) (Mueller, J.); *United States v. Ruelas*, 2021 WL 1615369, at *3 (N.D. Cal. Apr. 26, 2021) (Koh, J.) ; *United States v. Jackson*, 2021 WL 1927506, at *3 (N.D. Cal. May 13, 2021) (Breyer, J.*); United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (Sabraw, C.J.); *United States v. Valencia-Cortez*, 2022 WL 36513, at *5 (S.D. Cal. Jan. 3, 2022) (Huff, J.); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) (Underhill, J.) ("Given current understanding, the Pfizer vaccine is so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule—and certainly not extraordinary and compelling."); *United States v. Gordon*, 2021 WL 2094470, at *3 (D. Haw. May 24, 2021) (Seabright, C.J.) (54-year-old defendant presents diabetes, heart disease, obesity, and possible kidney disease; relief is denied as he has been vaccinated); *United States v. Williams*, 2021 WL 4860170, at *3 (N.D. Ind. Oct. 19, 2021) (DeGuilio, C.J.) ("An overwhelming amount of district courts across the country have held that being fully vaccinated drastically reduces the risk of becoming severely ill and therefore denied compassionate release."); *United States v. Butler*, 2021 WL 2471474 (E.D. Mich. June 17, 2021) (Goldsmith, J.) (vaccinated and recovered from COVID); *United States v. Bennett*, 2021 WL 2410535, at *6 (W.D.N.Y. June 14, 2021) (Skretny, J.) ("although Bennett has demonstrated (and the government concedes) that he falls into the high-risk category, he is fully inoculated and has failed to show that FCI Edgefield's present plan and efforts to combat COVID-19 are inadequate or that the facility is unable to adequately treat him if he falls ill. To the contrary, it appears that FCI Edgefield's efforts are working since it is currently reporting no positive cases."); *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit."); *United*

12

2. Children

In a somewhat strange aspect of the motion, the Defendant refers to his children and the death of their mother to reduce his sentence. C.R.Motion 5-6. The government will not address this claim in detail, but does note that the mother of his children died prior to the Defendant's Indictment (PSR ¶133). As a result, this information was known to the Court at sentencing, considered by the Court, and factored into the lenient sentence that the Defendant received.

Indeed, it is the Defendant's history of vicious crimes, drug dealing, firearm possession, escape and intimidation of witnesses, that have resulted in his being a category VI criminal history with an astounding 22 criminal history points, and the prison sentences he has served over the course of his entire life that prevented him from assuming a more meaningful role in children's life. *See PSR ¶¶88-108*. These crimes, and the Defendant history of being imprisoned for committing them, do not entitle him to a further reduction in his sentence.

3. Conclusion

Based on the foregoing, the Defendant has failed to establish the existence of an "extraordinary and compelling" reason warranting consideration for compassionate release. *See, e.g., United States v. Rodriguez,* 2020 WL 4581741, *2-*3 (D. Conn. Aug. 10, 2020) (concluding that defendant's asthma did not constitute an "extraordinary and compelling reason" supporting defendant's release request);; *United States v. Mazzo,* 2020 WL 3410818, *3 (D. Conn. June 22, 2020) (same); *United States v. Germano*, __ F.Supp.3d __, 2021 WL 1862202, at *2 (D. Mass.

---

*States v. Berry*, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) (Savage, J.) ("Although he suffers from medical conditions making him more vulnerable to serious illness or death from COVID-19, the risks posed to Berry's health are minimal. His vaccination status provides sufficient protection against the risks. Moreover, Berry is housed at FCI Schuylkill, which has no reported cases among inmates or staff."); *United States v. Quay*, 2021 WL 4037583, at *6 (E.D. Pa. Sept. 3, 2021) (Slomsky, J.) (the defendant presents diabetes, hypertension, and obesity, but does not present an extraordinary and compelling reason as he has been vaccinated).

May 10, 2021) (denying compassionate release despite defendant's increased risk of severe illness due to medical conditions); *United States v. Hardy*, 470 F. Supp. 3d 61, 63 (D. Mass. 2020) (denying compassionate release for defendant suffering from hypertension, sleep apnea, diabetes and asthma). In short, the Defendant "has not" "proffered any facts to suggest that his medical conditions substantially diminish his capacity to care for himself or to participate in measures to protect against the transmission of COVID-19. His medical conditions alone do not justify compassionate release." *United States v. Solans*, __ F.Supp.3d. ___, 2021 WL 4776631 at *1 (D. Mass. Oct. 13, 2021) (Gorton, J.). Consequently, the Defendant has failed to prove that an extraordinary or compelling reasons exist to warrant a reduction in his sentence.

### III. THE DEFENDANT REMAINS A DANGER TO THE PUBLIC AND THE SECTION 3553(a) FACTORS DO NOT WEIGH IN FAVOR OF RELEASE

Even if the defendant provided an extraordinary or compelling reason for release, he must still demonstrate that his proposed release is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). This, in turn, requires consideration of the factors expressed in 18 U.S.C. § 3553(a)—including, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to provide the defendant with needed . . . medical care or other correctional treatment; the applicable guidelines; and pertinent Sentencing Commission policy statements. *See* USSG § 1B1.13.

"A defendant who demonstrates both that extraordinary and compelling reasons exist for a sentence reduction and that such a reduction is consistent with the applicable policy statement must clear yet another hurdle. He must persuade the district court that the section 3553(a) factors weigh in favor of a sentence reduction." *Teixiera-Nieves*, 2022 WL 109269, at * 4. "Thus, a district court's decision to deny compassionate release may be affirmed solely on the basis of its

14

supportable determination that the section 3553(a) factors weigh against the granting of such relief." *Teixiera-Nieves*, 2022 WL 109269, at * 4. In other words, a supportable determination that the balance of the section 3553(a) factors weighs against a sentence reduction constitutes an independent reason to deny compassionate release." *Teixiera-Nieves*, 2022 WL 109269, at * 4

The Defendant has failed to demonstrate that he can satisfy the principal requirement for compassionate release: that he does not present a danger to the community. The statute states that the court may reduce a sentence if "a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(a)(1)(A)(ii). This determination is lacking. Furthermore, the Defendant's Motion does not even make any effort to show that he would not pose a danger if released. In fact, this category VI criminal history with 22 criminal history points (literally off the sentencing chart) alone demonstrates that the Defendant presents a significant danger to the community, and others.

The facts of the instant conviction, and this case arising numerous prior assaults and violent crimes suggest that the Defendant remains a danger and that the sentencing factors do not warrant a reduction. The Defendant was recently sentenced less than seven months ago,[9] and the timing of this motion suggests that he has not yet accepted responsibility for his crimes or acknowledged the significantly reduced sentence that he received from this Court. The Defendant's motion, of course, makes no reference to his crimes, or the extreme violence he has visited upon his victims throughout his life, and in this case.

---

[9] E.g., not supporting his submission with medical records, or information concerning his refusal to be vaccinated. *See supra*.

15

The government will not belabor the issue of the Defendant's dangerousness, which was fully developed at the sentencing hearing, and thoughtfully addressed by the Court in imposing the 108-month sentence. *See* ECF #1952. To remind this Court, the approximately 280 grams of cocaine base, 50 grams of heroin, and 50 grams of fentanyl were recovered from the Defendant personally (through sales or seizures during search warrants). *See* PSR ¶¶46-87. Moreover, the Defendant was in possession of a 9mm firearm when he was arrested. *See* PSR ¶78. These drugs were in addition to this leadership of an extremely violent criminal enterprise that targeted witnesses frequently and without remorse.

Beyond the instant case, this is an extremely violent Defendant, with an outrageous criminal history, and significant position of leadership in an extremely violent criminal history. For example, the Defendant was convicted of: Assault with a Knife and Threats in a Latin Kings assault (PSR ¶101); Firearm and Drug Possession in a School Zone (PSR ¶103); Assault and Battery by Means of a Heineken bottle, where he struck a woman (PSR ¶105); Witness Intimidation, and Assault and Battery on his ex-girlfriend, where he punched her in the face and pulled her down the stairs (PSR ¶106). These violent incidents are in addition to his numerous drug convictions and property crimes. *See* PSR ¶¶94, 95, 96, 97, 98, 100, 102, 104.

Seven months ago, this Court considered the full extent of the Defendant's dangerousness when it sentenced him to a specific term of 108 months, which itself was far below the applicable guidelines sentence range. These considerations of sentencing and the Defendant's outrageous propensity for violence and dangerousness weighed in this Court's decision, and they outweigh any reason suggested by the Defendant to release him now. In short, this Defendant "already received a below guidelines sentence—any further reduction would inappropriately minimalize

16

the danger of his conduct." *United States v. Decoteau*, 525 F.Supp.3d 268, 270 (D.Mass. Mar. 16, 2021) (Hillman, J.).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion for Compassionate Release from Incarceration.

>Respectfully submitted,
>
>WILLIAM F. ABELY
>ACTING UNITED STATES ATTORNEY
>
>By:   */s Philip A. Mallard*
>      PHILIP A. MALLARD
>      Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that the documents filed through the ECF system will be sent via mail to the Defendant at FCI-Cumberland.

>Francisco Lopez, Reg #01998-138
>FCI CUMBERLAND
>FEDERAL CORRECTIONAL INSTITUTION
>P.O. BOX 1000
>CUMBERLAND, MD  21501
>
>     */s Philip A. Mallard*
>     PHILIP A. MALLARD
>     Assistant United States Attorney

Date: February 5, 2022

Exhibits Filed Under Seal

1. Email from Bureau of Prisons Staff Attorney
2. Defendant's Medical Records

17